# CASES DETERMINED

AT THE

# January Term, 1914.

MAAHS, Respondent, vs. ANTIGO LUMBER COMPANY and another, Appellants.

*January 15—February 3, 1914.*

*Master and servant: Injury: Settlement: Pleading: Election between causes of action: Employers' liability insurance: Cancellation of policy: Rights of injured employees: Corporations: Personal liability of manager: Appeal: Orders reviewable.*

1. Where, in an action for personal injuries to an employee, the complaint stated a cause of action for tort and also a cause of action based on an agreement for settlement, plaintiff had at least the right to elect to prove his cause of action for tort.
2. Evidence in such case which tended to show that a settlement of plaintiff's claim agreed upon between the parties was conditional upon approval thereof and payment of the amount by an employers' liability insurance company, but which failed to show such approval or that the insurer paid the sum agreed upon on account of plaintiff's injury, is *held* insufficient to show a settlement agreement.
3. There being no contractual relation between injured employees and a liability insurance company which has issued a policy to the employer, such company and the employer may agree to the surrender and cancellation of the policy on such terms as they see fit.
4. Where several actions by injured employees were pending when the employer and a company which had insured against such liability made an agreement whereby, upon payment of a certain sum to the employer, the policy was canceled, but there was nothing in the agreement whereby the money so paid was impressed with any trust in favor of any one, the plaintiff in one of said actions was not entitled to recover on the theory that a part of such money rightfully belonged to him.
5. In an action for personal injuries against a corporation and its president, a complaint alleging as to the latter that he owned

VOL. 156—1

all of the stock of the corporation except two shares held by employees, that as president and manager he had full and absolute control and supervision of the operation of the saw-mill in which plaintiff worked and of assigning employees to their respective duties, that it was the duty of defendants to provide safe and suitable machinery and to securely guard the gearing and shafting so located as to be dangerous, and that they failed in such duty, by reason whereof plaintiff was injured, is *held* to state a cause of action against such individual defendant.

6. There are cases in which the manager of a corporation is equally liable with it for its torts.

7. An order directing the payment of money into court to abide the result of the action becomes part of the judgment roll, and under sec. 2872, Stats., may be reviewed on an appeal from the judgment without any exception having been taken thereto.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Reversed.*

The plaintiff, an employee of the *Antigo Lumber Company,* commenced an action against said company to recover $3,000 damages for a personal injury received in the course of his employment. Later a motion was made to amend the complaint. The proposed amendment set forth that one *O. G. Erickson* was the managing officer of the company and had full control and supervision of the operation of the mill and of assigning the employees to work on the various machines in the mill, and was personally liable to the plaintiff for his injury; that *Erickson* owned practically all of the stock in the corporation and that the board of directors therein consisted of himself and two employees in his office, and that he was practically the owner of the sawmill in which the plaintiff was injured. The amendment further set forth that the *Antigo Lumber Company* was hopelessly insolvent since July, 1911; that at the time the plaintiff was injured the *Antigo Lumber Company* was insured in the Ætna Life Insurance Company against loss and damage by reason of injuries received by its employees; that the action

was begun in June, 1911, and that thereafter some negotiations were had in reference to settling the case; that in the month of October, 1911, an agreement was made between the attorneys representing the plaintiff, and *Erickson* acting in his own behalf and in behalf of his codefendant, to settle the case for $1,000, provided the insurance company would approve of such settlement and furnish the money to make the payment; that the insurance company believed the plaintiff had a valid claim against the *Antigo Lumber Company* and would eventually upon the trial of the case recover judgment against said company and that the insurance company would be liable therefor under its policy of insurance, and that said insurance company was ready and willing to settle and compromise the suit by paying the sum of $1,000 in compensation for the loss and damage sustained by the plaintiff; that said *Erickson,* acting for himself and his codefendant, instead of requesting the insurance company to compromise and settle the action upon the basis of the offer made by the plaintiff, as he agreed to do, entered into an agreement with the insurance company whereby the *Antigo Lumber Company* "did release and forever discharge said Ætna Life Insurance Company from all liability under said policy on account of personal injuries suffered by the plaintiff and for its ultimate liability to make compensation for the loss and damage so sustained by the plaintiff, on payment of $1,500 to him by said Ætna Life Insurance Company, and said *Erickson* thereupon accepted and received the said sum of $1,500 from the Ætna Life Insurance Company and wrongfully and fraudulently appropriated the same to his own use and the use of the defendant *Antigo Lumber Company,* . . . and refused to pay or turn over said sum or any part or portion thereof to the plaintiff."

The proposed amendment further set forth that the sum of $1,500 paid by the insurance company to the defendant was paid on account of and as compensation for the loss sus-

tained by the plaintiff and was intended by the insurance company to be in payment and discharge of its liability arising on account thereof under and by virtue of said policy of insurance, and that $1,000 thereof rightfully and equitably belonged to the plaintiff and was received by the defendant *O. G. Erickson* as money belonging to the plaintiff. It was further alleged that the act of the defendants in making said settlement with said insurance company and executing said release and discharge and in appropriating and diverting said moneys to their own use was wrong and unlawful; that said *Erickson* then and for a long time prior thereto well knew that the *Antigo Lumber Company* was insolvent and that no judgment plaintiff might recover against the *Antigo Lumber Company* could be collected on execution or otherwise, and that the settlement by said *Erickson* and the diversion of said money by him was made with intent wrongfully to cheat and defraud the plaintiff and wrongfully secure to himself and to said *Antigo Lumber Company* pecuniary profit and gain on account of their own negligence and wrongful acts in crippling and maiming the plaintiff.

Coupled with this motion to amend, the plaintiff also moved for an order requiring the defendants to pay into court *pendente lite* the sum of $1,500 received from the insurance company. The demand for judgment in the amended complaint, as in the original complaint, was for $3,000 damages for the injuries received. The motion to amend the complaint was granted, and the same order also required the defendants to pay the sum of $1,500 into court during the pendency of the action, and to abide the further order of the court.

The defendants answered separately to the complaint. The *Antigo Lumber Company* denied negligence on its part, and set up contributory negligence on the part of the plaintiff, admitted insurance in the Ætna Life Insurance Company, and alleged that it had no right of action against said

insurance company until such time as judgment was recovered by the employee claiming damages and such judgment was paid by the defendant lumber company. The defendant *Erickson* answered, denying all liability on his part as well as most of the material allegations of the complaint.

On the issues thus made up the plaintiff sought to prove a cause of action in tort against the defendants. The court, after examining the pleadings, held that the only issue was whether or not a settlement had been made, and refused to permit the plaintiff to go further than to show that he was in the employ of the *Antigo Lumber Company* and was injured while in such employ and that the settlement of his claim was made and agreed upon.

The court also refused to permit the defendant to offer any evidence tending to show that there was no liability on the part of the *Antigo Lumber Company* for the injury which plaintiff received. The defendants' evidence was confined to the issue of settlement. After hearing the evidence the court directed a verdict for the plaintiff against both of the defendants for $1,000, and defendants appeal from this judgment.

The cause was submitted for the appellant *Antigo Lumber Company* on the brief of *Morson & Smelker;* for the appellant *Erickson* on that of *Henry Hay* and *F. J. Finucane;* and for the respondent on that of *Goodrick & Goodrick,* attorneys, and *T. W. Hogan,* of counsel.

To the point that there was no privity of contract between the employee and the insurance company, counsel for the appellant *Erickson* cited *Stenbom v. Brown-Corliss E. Co.* 137 Wis. 564, 119 N. W. 308; *Carter v. Ætna L. Ins. Co.* 76 Kan. 275, 91 Pac. 178; *Connolly v. Bolster,* 187 Mass. 266, 72 N. E. 981; *Bain v. Atkins,* 181 Mass. 240, 63 N. E. 414.

BARNES, J. It would seem to have been the intention of the pleader to state a cause of action for tort in the amended

complaint and to compel the defendants, because of the in-
solvency of the *Antigo Lumber Company,* to pay the money
received from the insurance company into court to the end
that the same might be applied in satisfaction or partial
satisfaction of any judgment that might be recovered for
the tort.   Conceding that a cause of action based on a set-
tlement was also stated, the plaintiff at least had the right to
insist on proving his cause of action in tort.   He was not
even given the right of election, and in this we think the
court was clearly in error.   The plaintiff, however, is seek-
ing in this court to sustain the judgment recovered, and if
the evidence warranted the direction of the verdict returned
the defendants have no cause for complaint.

However shady the transaction between *Erickson* and the
insurance company may appear, and it does appear shady
on *Erickson's* part, we fail to see how the ruling of the court
in directing a verdict can be approved.   This is so for two
reasons: First, because the plaintiff's evidence fails to show
that a settlement was made, and, second, because there was
ample evidence offered by the defendants tending to show
that a settlement was not made, to warrant the jury in so
finding.

The evidence offered on behalf of the plaintiff tended to
show that settlements of the claim of the plaintiff and of
that of Grall were made with *Erickson* for $1,600, provided
the insurance company would approve of the settlements and
pay the amounts agreed upon, and that plaintiff was to re-
cover $1,000 and Grall $600.   The plaintiff's evidence did
not show that the insurance company agreed to such settle-
ments or either of them or that it paid the sum agreed upon
on account of the injury which plaintiff received.   In this
respect the proof was insufficient and fell short of estab-
lishing a settlement agreement.

The evidence of *Erickson* was to the effect that he simply
agreed to transmit any proposition for settlement which
plaintiff or Grall might make to the insurance company, and

that he was willing to settle on any basis which was satisfactory to the insurer. He further testified that propositions to settle on the basis above stated were made to him and that the insurance company refused to consider the matter of settling with the plaintiff on any such basis.

A written contract was made between *Erickson* and the insurance company whereby in consideration of $1,500 the insured agreed to surrender its policy of insurance and to relieve the insurer of all further liability thereon. The contract further provided that the *Antigo Lumber Company* should employ counsel and defend all personal injury actions pending against it, including those brought by the plaintiff and Grall. Upon the insistence of the insurance company there was paid out of the amount agreed upon to the attorney which the lumber company agreed to employ the sum of $442.18, and there was a further deduction of $57.82 made on account of unpaid premiums on the policy.

At the time of the surrender of the policy there were three personal injury actions pending against the *Antigo Lumber Company,* one brought by the plaintiff to recover $3,000 damages, one brought by one Henry Larson to recover $25,000 damages, and one brought by Grall. The amount of damages claimed in the Grall case does not appear, but it does appear that Grall was willing to settle for $600. It does not appear whether or not there were any other claims of a like nature on which suit had not been brought.

There was no contractual relation between the injured employees of the *Antigo Lumber Company* and the insurance company. *Stenbom v. Brown-Corliss E. Co.* 137 Wis. 564, 119 N. W. 308; *Carter v. Ætna L. Ins. Co.* 76 Kan. 275, 91 Pac. 178. This being so, the parties to the insurance contract might agree to its surrender and cancellation on such terms as they saw fit. The amount actually paid to the defendants was $1,000. But treating the amount paid to the attorney as a payment to the defendants, still the sum turned over was $157.82 short of the amounts which plaint-.

iff and Grall agreed to accept. Then it was manifest that the insurance company by its contract with the insured relieved itself from all liability on the $25,000 suit brought by Larson, as well as any other claims that might exist on account of injuries received by the employees of the *Antigo Lumber Company*. It denied liability on account of the *Maahs* and Grall claims as well as on account of the Larson claim. There was nothing in the contract between the insurer and the insured by which the money paid to the latter was impressed with any trust in favor of any one. *Bain v. Atkins,* 181 Mass. 240, 63 N. E. 414. It is therefore quite clear that no case was made and no facts existed which would warrant a recovery upon the theory on which one was allowed.

The plaintiff should have been allowed to prove his cause of action in tort. It is not so clear that the complaint states a cause of action against *Erickson*. There are of course cases in which the manager of a corporation is equally liable with it for its torts.

The complaint charged that *Erickson* was the president and manager of the corporation and had full charge, management, control, and supervision of the erection, construction, and subsequent operation of the sawmill in which the plaintiff was injured; that said *Erickson* acting as the president and manager had full and absolute control and supervision of the operation of the sawmill and of assigning employees to operate the various machines thereof and to fill the different positions necessary for operating and running the mill; that it was the duty of the defendants to provide safe and suitable machinery and appliances for the plaintiff's use and to securely guard all gearing and shafting so located as to be dangerous to the plaintiff in the discharge of his duties; that the defendants provided machinery and appliances in the way of an unguarded gearing which was not safe and in which the plaintiff was injured. The complaint further set forth that *Erickson* was the practical owner of the sawmill, owning all of its stock

except two shares which were held by two of the employees of the corporation.

We think, under the liberal rules adopted for the construction of pleadings, these allegations are broad enough to admit proof of facts which would warrant a jury in finding that *Erickson* was liable to the plaintiff for his injury as well as the *Antigo Lumber Company*.

The point is made that the order amending the summons and complaint and directing the payment of $1,500 into court by the defendants cannot be reviewed because no appeal was taken therefrom within the time limited by law and because the same, with the exceptions taken thereto, was not incorporated in the bill of exceptions.

We do not decide that the order was not properly appealed from. It was part of the judgment roll under sec. 2898, Stats. It could therefore be reviewed on an appeal from the judgment without any exception having been taken thereto. Sec. 2872, Stats.

*By the Court.*—So much of the order as directed the defendants to pay the sum of $1,500 into court is reversed. The judgment is reversed, and the cause is remanded for a new trial against both of the defendants.

